# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black i-phone 15 Pro Max<br>Seizure No. 2024250100000501-0001<br>("Target Device 2") | Case No. **23mj4071-BGS** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952, 960, 963 | Importation of a Controlled Substance and Conspiracy |
| 21 USC Sec. 841, 846 | Distribution of Controlled Substances and Conspiracy |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Harvey, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: November 7, 2023

_____
*Judge's signature*

City and state: San Diego, California    Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black i-phone 15 Pro Max
Seizure No. 2024250100000501-0001
("**Target Device 2**")

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B-2
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 3, 2023, up to and including October 3, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States, and distribution of controlled substances within the United States, and conspiracy to do the same;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States, and distribution of controlled substances within the United States, and conspiracy to do the same;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and distribution of controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, and distribution of controlled substances within the United States such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, **Target Device 2**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960 963, 841, and 846.

# AFFIDAVIT

I, Special Agent David Harvey, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

>Black i-phone
>Seizure No. 2024250100000401-0002
>("**Target Device 1**")

>Black i-phone 15 Pro Max
>Seizure No. 2024250100000501-0001
>("**Target Device 2**")

as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, 963, 841, and 846 as further described in Attachment B-1 and B-2. The requested warrant relates to the investigation and prosecution of Rogelio TORRES Ramirez and Anthony Itxcoatl GUZMAN for conspiracy to import approximately 4.02 kilograms (8.88 pounds) of methamphetamine from Mexico into the United States, as well as possession with intent to distribute methamphetamine and conspiracy to do the same. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August of 2018. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, the Otay Mesa Port of Entry, and the Tecate Port Of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within

the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States, and distribution of controlled substances within the United States, and conspiracy to do the same;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States, and distribution of controlled substances within the United States, and conspiracy to do the same;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and distribution of controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, and distribution of controlled substances within the United States such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

# FACTS SUPPORTING PROBABLE CAUSE

7. On October 3, 2023, at approximately 9:19 am, K.A.B., a citizen of the United States, applied for entry into the United States from Mexico through the San Ysidro Port of Entry (POE) in vehicle lane #2. K.A.B. ("the driver") was the registered owner, and sole occupant of a white Hyundai Tucson ("the vehicle") bearing California license plates.

8. A Customs and Border Protection Officer (CBPO) was conducting pre-primary roving operations with his Human and Narcotic Detection Dog (HNDD), when he encountered the driver who said he was going to the Home Depot, located in San Diego, CA. The driver stated he had nothing to declare. The CBPO initiated an inspection of the vehicle and received an alert from his HNDD to the undercarriage of the vehicle. The CBPO observed what appeared to be a magnetically attached package under the vehicle. The CBPO escorted the vehicle to secondary for further inspection.

9. In the secondary lot, the CBPO confirmed there was a package magnetically attached to the undercarriage of the vehicle.

10. At approximately 9:43 am, the driver was released in the vehicle under constant surveillance by Homeland Security Investigations (HSI). The vehicle travelled North from the San Ysidro POE on Interstate 5 (I-5) to a Home Depot located in San Diego, CA. The driver parked the vehicle and entered the Home Depot. At approximately 10:21 am a gray Mercedes C250, bearing California plates, occupied by two Hispanic males approached the vehicle. The passenger, later identified as Anthony Itxcoatl GUZMAN, exited the gray Mercedes C250 and crawled under the vehicle. A takedown was initiated by HSI. GUZMAN fled back to the passenger seat of the gray Mercedes C250. The gray Mercedes C250, being driven by a subject later identified as Rogelio TORRES Ramirez, fled the parking lot of the Home Depot striking civilian vehicles as it fled. Some of the HSI agents remained on scene with the vehicle, while others pursued the gray Mercedes C250. The agents who remained on scene recovered the magnetically attached package from the undercarriage of the vehicle. The package was transported to the POE for processing.

11. HSI agents followed the gray Mercedes C250 on I-5 North where agents ultimately lost sight of it due to speeds in excess of 100 miles per hour (MPH). Utilizing various law enforcement databases agents were able to determine a probable location for the gray Mercedes C250 to be 4055 48th St, San Diego, CA 92105. Agents made their way to that location and observed the gray Mercedes C250 with damage consistent with the collision that occurred in the Home Depot parking lot, with its plates removed, pulled into a parking space. Agents conducted surveillance and observed TORRES exit the courtyard of the apartment complex, and enter a white BMW X3, later determined to be an Uber.

12. Agents followed the white BMW X3 until it stopped at 2nd Avenue and Beach Street in San Diego, CA. Agents contacted TORRES as he exited the white BMW X3 and placed him under arrest. Agents located a plastic wrapped package concealed on TORRES's person. A presumptive test was conducted on the crystal-like contents contained within the package, and the test was positive for the presence of methamphetamine. The package had a total approximate weight of .82 kilograms.

13. Agents who remained with the gray Mercedes C250 located at 4055 48th St, San Diego, CA 92105 observed GUZMAN exiting the courtyard of the apartment complex. Upon seeing agents, GUZMAN discarded a firearm into a green waste bin and fled on foot. After a short foot chase agents arrested GUZMAN.

14. TORRES and GUZMAN were positively identified by HSI agents as being the subjects in the gray Mercedes C250, bearing California Plates, that arrived at the Home Depot to retrieve the magnetic package from the vehicle.

15. While GUZMAN was being transported to the San Ysidro Port of Entry he spontaneously asked if he would be going to jail with his co-defendant. GUZMAN had not previously been advised that someone else was arrested.

16. Three packages from the vehicle and one package from TORRES were seized, with a total approximate weight of 4.02 kg (8.88 lbs.). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine. The

narcotics and the gray Mercedes C250 were seized.

17. TORRES and GUZMAN were arrested and charged with a violation of Title 21, United States Code, 841 and 846, conspiracy to distribute a controlled substance.

18. The **Target Devices** was found and seized by a Homeland Security Investigations agent (HSI) who was tasked to perform a search incident to arrest of both GUZMAN and TORRES. **Target Device 1** was found on TORRES's person and **Target Device 2** was found on GUZMAN's person.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that TORRES and GUZMAN were using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States and distribution within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

20. Based upon my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on September 3, 2023, up to and including October 3, 2023.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

25. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of TORRES and GUZMAN's violations of Title 21, United States Code, Sections 952, 960, 963, 841, and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1 and A-2, and seize the items listed in Attachment B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent David Harvey
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 7th day of November, 2023.

_____
Honorable Bernard G. Skomal
United States Magistrate Judge